THE WESTERN GROCER COMPANY, *Appellant*, V. P. B. ALLEMAN (*Defendant*) and V. MAY ALLEMAN (*Interpleader*), *Appellees*.

No. 16,287.

SYLLABUS BY THE COURT.

1. DEEDS—*Failure to Record—Innocent Purchaser—Consideration.* The grantee of a deed from one who has no title to the tract described, but who appears by the record to be its owner because a deed previously executed has not been recorded, is not entitled to the benefit of the recording act as an innocent purchaser, where the only consideration for the conveyance to him is the discharge of an antecedent indebtedness.

2. ———— *Same.* The application of this rule is not prevented by the fact that the grantee surrenders a past due, unsecured note to its maker, where such maker is a party to an action in which the deed is held to pass no title.

3. EVIDENCE—*Review—Attachment—Dissolution.* The evidence, being wholly in writing, examined and held to require the denial of two motions—one to dissolve an attachment, and the other to release property from its operation.

Appeal from Miami district court; WINFIELD H. SHELDON, judge. Opinion filed January 8, 1910. Reversed.

*G. W. Littick*, for the appellant.

*David F. Carson, James F. Getty*, and *F. D. Hutchings*, for the appellees.

The opinion of the court was delivered by

MASON, J.: In 1905 P. B. Alleman engaged in the grocery business in Kansas City, Kan. In November, 1906, he traded his stock for a tract of land in Miami

county, the owner of which executed a deed to him, which was not recorded. A few days later the same grantor executed a deed to Alleman's wife, which was made of record. At the time Alleman owed $588.15 to the Western Grocer Company, from which he had purchased most of his goods. The company sued him on its account, and attached the land, the attachment affidavit alleging fraud in the creation of the debt and in the attempted disposal of the debtor's property. Mrs. Alleman interpleaded and claimed the land, asserting that the deed had been made to her in satisfaction of a note for $1500 which her husband had given her for a loan of that amount in January, 1905. The trial court sustained a motion of the defendant to dissolve the attachment on the ground that the affidavit therefor was untrue, and also sustained a motion of the interpleader to release the land from the attachment on the ground that she was its owner. The plaintiff appeals from both orders.

The case was tried almost wholly upon affidavits. The deposition of one witness was used, but no oral testimony. Therefore "the case is presented here in practically the same aspect as the one which it bore in the district court" and the evidence "may be canvassed in the same manner as if the proceedings were original in this court." (*Bank v. McIntosh,* 72 Kan. 603, 610.)

There was a conflict of testimony with respect to the circumstances of the transfer of the title of the land. The former owner swears that he made the trade with Alleman about November 15, 1906, exchanging the land for the stock of goods; that he at once took possession of the stock; that the deed was executed and delivered to Alleman, who said nothing then or later about owing his wife money or selling the land to her; that a few days afterward Alleman returned and asked him to execute a new deed naming Mrs. Alleman as grantee, which he did, without the old deed having been returned and without any reconveyance having been

made to him.  This testimony was corroborated in detail by E. H. Shore, the agent who represented the landowner in the transaction, and also by the agent who acted for Alleman.  If it is true, then the title to the property passed to Alleman and remains there. His conduct might be deemed to effect a transfer to his wife by estoppel, as against himself, but this principle can not operate against the plaintiff.   The only evidence offered to contradict these three witnesses was that of the defendant, in these words:

"Affiant states that he got an opportunity to trade said stock and fixtures to one C. J. Burtner for the farm herein attached and made the deal, completing the same in the office of George W. Littick, plaintiff's attorney, who was present and overheard the conversation relative to said sale.  That he required the said Burtner to make the deed to his wife, V. May Alleman, and when the same was delivered to her she surrendered the note above set out."

"That the deed mentioned in the affidavit of E. H. Shore's was placed in escrow in the hands of David F. Carson [the attorney of Alleman in the litigation] and that when he [Alleman] saw his name as grantee therein he refused to accept it and that Shore then went to the wife of Burtner and to Burtner and obtained a new deed wherein the name of V. May Alleman was inserted as grantee."

No explanation whatever is offered as to the character of the "escrow," or as to what became of the first deed.  The defendant's affidavit can hardly be regarded as a denial of those of the plaintiff's witnesses, which must be taken to be true, as there is really nothing in the record to discredit them.   The affidavit of Mrs. Alleman on the subject of the land transaction is a mere conclusion, without probative value.  It reads:

"This affiant states that she received the deed to said real estate in good faith from C. J. Burtner and wife on the 20th day of November, 1906, and that C. J. Burtner and wife were the then owners of the same. That she paid therefor a valuable consideration, to wit, the sum of $1500."

35—81 KAN.

Assuming that her husband was in fact indebted to her and that when she took the deed and surrendered the note she had no knowledge that a deed had already been executed to her husband, she can not claim that the failure to record the first deed made her title good, for as the consideration for the conveyance to her was a preëxisting indebtedness she was not an innocent purchaser in such sense as to entitle her to the benefit of the recording act. This is in accordance with the clear weight of authority. (24 A. & E. Encycl. of L. 138, 139; 6 Cyc. 1073; *Birket v. Elward,* 68 Kan. 295, 302.) The rule was recognized in *Ruth and King v. Ford,* 9 Kan. 17, 27. In *Farlin v. Sook,* 30 Kan. 401, it was assumed without discussion that the grantee of a fraudulent grantor might be protected as an innocent purchaser although the consideration was an antecedent debt. But in *Henderson v. Gibbs,* 39 Kan. 679, 686, 687, it was said:

"Where the fraudulent vendee has transferred the property to some innocent third person . . . the title passes from the original owner, first to the fraudulent vendee, and then to the third person, but such title is always defeasible if the original owner has the power to place the other parties *in statu quo.* In such a case the original owner may rescind his contract with his fraudulent vendee and repossess himself of the property if he places or leaves both his fraudulent vendee and the second purchaser *in statu quo.* . . . Where the second purchaser has taken the property only in payment or part payment of a preëxisting debt, and has not paid or parted with or surrendered anything of value in consideration therefor, he takes nothing but the fraudulent vendee's title, and the original owner may rescind his contract with his fraudulent vendee and retake the property."

The fact that Mrs. Alleman delivered to her husband the note which was the evidence of her debt does not prevent the application of the rule. If the mere surrender of a past due, unsecured note ordinarily entitles one to be considered an innocent purchaser of land upon the faith of the record title, it is because

the act places him at a disadvantage—takes from him a right which can not be readily and completely restored. Here a decision that the deed passes no title to the wife can place her in no worse position than she was in before. She will still have the claim against her husband, and that is all she had at first. As he is a party to the litigation he will be concluded by the judgment and can make no defense to the note based on the transaction involved. Under such circumstances the mere physical possession of the note is unimportant.

For the reasons stated the motion of the interpleader to release the land from the attachment should have been denied, upon the ground that she had failed to establish her ownership. It remains to consider whether the evidence showed the existence of grounds of attachment against the defendant. The plaintiff's credit manager swore that the goods were sold upon the strength of statements made by Alleman from time to time of his financial condition, purporting to disclose all of his indebtedness, but never mentioning a loan from his wife. Several other witnesses testified to the making of these statements. Alleman himself did not deny having made them. Indeed, he expressly said that "he always told plaintiff of his financial condition upon its inquiry." He did not profess, however, ever to have mentioned to the plaintiff that he was indebted to his wife, but asserted "that at the time the reports made in regard to his financial condition were made by agents of Dun and Bradstreet he was not looking for credit." It is therefore beyond dispute that Alleman did make financial statements to the grocer company. It is equally clear that these statements omitted the very important item of an indebtedness to his wife substantially equal to his original investment in the business. It would be unreasonable to doubt that the statements were relied upon and that the goods were sold by reason of them. They had no other purpose than as a basis of credit, and the defendant must have so understood. The debt sued upon was therefore fraudulently con-

tracted within the meaning of the attachment statute. (4 Cyc. 415.)

These considerations make it unnecessary to discuss other features of the evidence. The orders appealed from are reversed and the cause is remanded with directions to deny both motions. This decision is a final adjudication against the defendant that the attachment was rightfully issued (*Hoge v. Norton,* 22 Kan. 374; *Hillyer v. Biglow,* 47 Kan. 473; 4 Cyc. 810), but is not conclusive upon the issue between the plaintiff and the interpleader as to the ownership of the property levied upon. (*White-Crow v. White-Wing,* 3 Kan. 276; *Treptow v. Buse,* 10 Kan. 170; *Watson v. Jackson,* 24 Kan. 442; *Frazer v. Barry,* 4 Kan. App. 33.) Formal pleadings have already been filed presenting that question, which can be better determined by a full trial according to the ordinary procedure than by a hearing upon affidavits for and against a motion.