No. 28,427.

Zona Kesterson Berg et al., Partners as Zona Berg and Son, *Appellants*, v. The Citizens State Bank and J. W. Werts, *Appellees.*

(273 Pac. 462.)

Opinion filed January 12, 1929.

D. M. McCarthy, of Mankato, for the appellants.

N. J. Ward, of Belleville, for the appellees.

The opinion of the court was delivered by

Hopkins, J.: The action was one to recover the price of a Chevrolet coupé. The defendant prevailed, and plaintiffs appeal.

The facts are substantially these. The plaintiffs, mother and son, were engaged in the automobile business in Superior, Neb. One A. R. Rodefer conducted a garage business in Republic City, Kan. The Citizens State Bank of Republic City was in need of a car and entered into negotiations to purchase a Chevrolet coupé from the plaintiffs through Rodefer. Rodefer was a customer of the defendant bank and had an overdraft. He brought a Chevrolet coupé from plaintiffs at Superior, Neb., to Republic City, to demonstrate to J. W. Werts, cashier of defendant bank. The latter purchased the car, but instead of paying plaintiffs therefor delivered a deposit slip to Rodefer, showing deposit by him with the defendant bank of a "Chevrolet coupé, $400." Rodefer then wrote his check to plaintiff for the $400, payment of which was refused by the bank, it having charged Rodefer's overdraft against his account. The plaintiffs sought to recover the automobile or its equivalent value.

Rodefer having removed to California, his testimony was taken by deposition. On the trial of the case material parts of his testimony were stricken out. Other material testimony offered by plaintiffs was rejected, then a demurrer to plaintiffs' evidence sustained and judgment directed for the defendant.

The bank contends that it was dealing with Rodefer; that he was engaged in the garage business; that it purchased the automobile from him and that when the purchase was made it gave him credit as evidenced by the deposit slip. That it was compelled to honor Rodefer's checks; that it had the right to apply any credit of Rodefer in his account to his other indebtedness to the bank. That Rodefer was the agent for the plaintiffs, was lawfully in possession of his principals' (plaintiffs') property and that the deposit was properly made. It also argues that the acceptance by the plaintiffs of Rodefer's check was a ratification by the plaintiffs of the act of Rodefer in making the deposit in the bank.

The defendant's presentation of the matter to the lower court, and here, is subtle and adroit, but cannot be sustained. The facts were, substantially, that Werts told Rodefer the bank was in need of a good, secondhand automobile. Rodefer told Werts that plaintiffs had such a car, which he believed would be all right and suitable for the purpose. Werts stated he would like to see the car and try it out; that if it was all right he would buy it for the bank. Rodefer then told Werts he would go to Superior and have Mrs. Berg bring the car down or bring it himself and give a demonstration. To this Werts assented. Accordingly Rodefer went to Superior, told Mrs. Berg that the bank desired a good, secondhand car; that he came to see about a demonstration of it. She advised him she was just leaving for Colorado, but after consideration agreed that he could take the car to Republic City, but stated that she wanted $400 in cash for the car, or the car returned that day or the next. Rodefer drove the car to Republic City, demonstrated it to Werts, had considerable negotiation about it, but told Werts that Mrs. Berg had to have $400 net for the car. Werts took the car and had it stored in the basement of the Ford agency at Republic City, where it remained several weeks. Upon Mrs. Berg's return from Colorado she learned that the car had not been paid for. She made several attempts to see Werts who was "out." She got no satisfaction from other officers of the bank and was compelled to bring this action to recover the car or its value.

What the bank actually attempted to do was to take plaintiffs' car in payment of Rodefer's overdraft. With full knowledge of all the facts it had no right to do this. Cases cited by the defendant as sustaining its right to convert this automobile to payment of Rodefer's account (*Martin v. Bank,* 66 Kan. 655, 72 Pac. 218; *Kimmel v. Bean,* 68 Kan. 598, 75 Pac. 1118; *Benjamin v. Bank,* 98 Kan. 361, 158 Pac. 65; *Tire & Rubber Co. v. Bank,* 109 Kan. 772, 204 Pac. 992) and other similar authorities, have no application. Plaintiffs concede that a bank has the authority to apply the checking account of a depositor on the past-due indebtedness of the depositor with the bank (*Citizens Bank v. Bowen,* 21 Kan. 354; *Docking v. Commercial National Bank,* 118 Kan. 566, 235 Pac. 1044) but, and we think rightfully, contend that those cases have no application to the facts here. "As a general rule the sale must be for cash only, and in the absence of special authority, mere authority to sell does not give the agent authority to sell on credit and such an agent cannot bind his principal by receiving payment in bonds, notes, or other paper." (2 C. J. 599, § 234.) In Mechem on Agency it is said:

"In the absence of anything to the contrary, it will be presumed that the sale is to be for cash in hand. An agent authorized to sell chattels has, therefore, no implied power to give credit unless there is a valid usage to that effect at that time and place." (§ 353.)

Section 344 of the same treatise states:

"For reasons similar to those preventing payment to an agent authorized merely to sell, the purchaser cannot set off against the principal a debt due him from the agent."

Section 785 of the same work reads:

"It is a general principle that no man can be divested of his property, without his own consent or voluntary act. Hence whoever claims to have acquired the title to goods of the principal, through some dealing with his alleged agent, must be prepared to show, not only that the agency existed but that the agent had authority so to transfer the property. Without the co-existence of both of these elements, the title must fail. The question of authority here is the same as in other cases which have been considered. The act must be within the scope of the authority which the principal has held the agent out to the world as possessing."

In the opinion in *Grubel v. Busche,* 75 Kan. 820, 822, 91 Pac. 73, the court said:

"Moreover an agent with authority to sell has only the implied power to

sell for cash and it is undisputed that Busche paid no cash but merely surrendered to the agent, Dysert, a note which he held against Dysert. It is well settled that a sale under such circumstances passes no title as against the owner." (See, also, *Henderson v. Gibbs,* 39 Kan. 679, 18 Pac. 926; *Schulein v. Hainer,* 48 Kan. 249, 29 Pac. 171; *Guernsey v. Davis,* 67 Kan. 378, 73 Pac. 101.)

In *Warner et al. v. Martin,* 11 How. (U. S.) 209, 13 L. Ed. 667, it was held:

"When a merchant, in order to secure himself from loss, took merchandise from a factor, with a knowledge that the factor was about to fail, the principal who consigned that merchandise to the factor may avoid the sale, and reclaim his goods, or hold the merchant accountable for them."

And the court also held:

"A factor or agent who has power to sell the produce of his principal has no power to affect the property by tortiously pledging it as a security or satisfaction for a debt of his own, and that it is of no consequence that the pledgee is ignorant of the factor's not being the owner.

"Nor can a factor sell the merchandise of his principal to a creditor of the factor in payment of an antecedent debt. Such a transfer is not a sale in the legal acceptation of that term." (See, also, *Grocer Co. v. Alleman,* 90 Kan. 363, 133 Pac. 575; *Harnish v. Barzen,* 103 Kan. 61, 173 Pac. 4; *Tough v. Bank,* 89 Kan. 583, 132 Pac. 174; *Grooms v. Neff Harness Company,* 79 Ark. 401, 96 S. W. 135; *Crocker v. United States,* 240 U. S. 74, 60 L. Ed. 533.)

The plaintiffs complain of the exclusion of evidence. Defendants reply that the excluded evidence offered by the plaintiffs was not reproduced on the motion for a new trial, so that the alleged error is not available on review. (R. S. 60-3004, *Robinson v. Sullivan,* ante, p. 248.) The rule invoked by the defendant does not apply because the court sustained a demurrer to plaintiffs' evidence and no verdict or decision was rendered. (*Wagner v. Railway Co.,* 73 Kan. 283, 85 Pac. 299; *City of McPherson v. Stucker,* 122 Kan. 595, 256 Pac. 963.) Moreover, part of such evidence was stricken from the deposition of Rodefer, the formal presentation of which was not necessary on the hearing of the motion for a new trial because the rule does not apply to documentary evidence. (*City of McPherson v. Stucker,* supra.) The rejected oral evidence proffered by the plaintiffs was for the purpose of showing the value of the car and was rejected because it was immaterial. We think this ruling correct. It appears to be conceded by the defendant that it purchased the car for the agreed price of $400. The plaintiffs sued to recover $400, so there is no dispute between the parties as to the

amount. If plaintiffs recover, the amount is fixed. Such evidence was therefore immaterial. Not so concerning the evidence stricken from the deposition. Some time after the sale of the car to the bank Rodefer removed to California. His deposition was taken there. He was asked in his direct examination relative to going to Superior, getting the car, bringing it back and talking with Werts with reference to selling it. Portions of his answers bearing upon his agency was stricken out. We think this was error. Other answers giving his conversation with Werts, defendant's cashier, were excluded on the ground that they were not responsive to the question. The court offered to continue the case for the retaking of the deposition, but plaintiffs chose to proceed. We think the court was mistaken, also, in striking this testimony from the deposition. The whole subject matter was being testified to by Rodefer who, as agent for the plaintiffs, had the dealings with the defendant, and the sustaining of the objection and striking of testimony from the deposition was highly technical. Upon a new trial such testimony should be admitted.

The defendant in a cross appeal complains that it was not permitted to submit to the jury a defense pleaded in the answer to the effect that the plaintiffs had caused the arrest of Rodefer for giving the check, knowing at the time "that he had no funds on deposit with the bank with which to pay the check." It is contended that the plaintiff Zona Berg swore to the complaint and caused the arrest, and that the allegation in the complaint is directly opposed to the allegations of the petition, and that estoppel should apply. We cannot sustain this contention. The swearing to the complaint against Rodefer under all the circumstances was not an election of remedies, was not inconsistent with the claim of plaintiffs against the defendant and did not preclude recovery of the price of the car from the defendant. The filing of complaint and causing the arrest of Rodefer by the plaintiffs was not a defense to the action for recovery of the price of the car. In this connection it may be observed that a motion by the plaintiffs to strike from Rodefer's deposition certain questions asked by the defendant with relation to the criminal prosecution, should have been sustained.

The judgment is reversed and the cause remanded for a new trial.