### GREAT FALLS NAT. BANK v. McCLURE et al.

(Circuit Court of Appeals, Ninth Circuit. April 7, 1908.)

No. 1,496.

1. FRAUDULENT CONVEYANCES—SUFFICIENCY—ATTACHMENT—LACHES IN ENFORCEMENT.

That no attempt was made to enforce a judgment in an action at law in which property was attached until five years after it was rendered is not ground for the annulling of such judgment by a court of equity at suit of a subsequent creditor of the same debtor, who brought an action on his claim and recovered judgment after execution had been issued on the prior judgment; no facts being alleged to show that such prior judgment was not based on a valid indebtedness.

2. SAME—SUIT FOR ANNULMENT—SUFFICIENCY OF BILL.

A bill by a judgment creditor of a mining company to annul a prior judgment obtained against such company by another creditor, on the ground that the latter made himself personally responsible for complainant's debt, that when his own debt was created he made certain promises to the company which he did not perform, and that the company, in which such prior judgment creditor was a large stockholder, shut down its

works and failed to redeem property sold under an execution against it, *held* not to allege facts which entitled complainant to the relief sought.

Appeal from the Circuit Court of the United States for the District of Montana.

A. C. Gormley, for appellant.
Ira T. Wight, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The sufficiency of the bill of complaint is the sole question for consideration on this appeal. It was filed February 25, 1907, and alleges, among other things, that on the 14th of December, 1901, the defendant Charles D. McClure commenced an action in the court below against the Diamond R Mining Company to recover certain money theretofore advanced by him to the company, in which action a writ of attachment was issued, directed and delivered to the defendant Merrifield as marshal, in pursuance of which writ the marshal levied upon certain real estate in Cascade county, Mont., belonging to the mining company, and also upon certain of its personal property there situated, placing in charge of the latter a keeper, a description of all of which property is contained in the bill, and constituting, according to the averments of the bill, all of the property owned by the company. The bill alleges that summons in that action was served upon the president of the mining company, L. S. McClure, a brother of Charles D. McClure, and that on the 16th day of January, 1902, a judgment by default was entered in the action against the company and in favor of the plaintiff therein for the sum of $86,180 and $53.30 costs. It is alleged that the plaintiff therein did not cause a writ of execution to be issued upon the judgment until January 10, 1907, and "that the said defendant has by his laches and unreasonable delay waived, abandoned, and lost whatever lien he may have had or claimed upon said property." The bill alleges that on the 17th day of December, 1907, the complainant commenced an action in the district court of the Eighth judicial district of the state of Montana, in and for the county of Cascade, against the same mining company, in which action it procured a writ of attachment to be issued, directed to the sheriff of the county of Cascade, which the sheriff undertook to levy upon the same property theretofore attached and held by the marshal in the suit of Charles D. McClure against the mining company; the personal property, however, remaining in the possession of the keeper appointed by the marshal. The bill alleges that, after due service of summons in the action so brought in the state court, judgment was duly entered therein against the defendant company, and in favor of the plaintiff in that action, for the sum of $25,304.84 and $27.70 costs, which judgment was thereupon duly docketed in the office of the clerk of the state court, no part of which has been paid. The bill shows that the action brought by the Great Falls National Bank in the state court was, aside from two claims assigned to it amounting in the aggregate to $3,261.37, based upon certain promissory notes executed by the mining company in

consideration of money loaned to it by the bank, and it also shows that the preceding action brought by Charles D. McClure against the mining company in the court below was for money by him theretofore loaned to the company. The prayer of the bill is for a—

"decree that complainant has a first and prior lien upon all of said property, and that the attachment or pretended attachment made in said cause of Charles D. McClure, plaintiff, against Diamond R Mining Company, defendant, hereinbefore mentioned, is null and void and of no effect, or in any event has become lost and abandoned; that the judgment entered therein is void as to this complainant, or in any event has become satisfied; that the writ of execution therein be withheld; that the defendants herein, their officers, agents, and servants, be restrained and enjoined from selling or disposing of, in any manner whatsoever, under the said writ of execution issued in the above-mentioned action, any of the property herein described and set forth; and for such other and further relief as to the court may seem meet and equitable."

As the sole basis for such relief the bill alleges, in addition to the matters above stated, that Charles D. McClure and L. S. McClure are brothers, and during all of the times mentioned in the bill owned and controlled, and still own and control, a majority of the capital stock of the mining company; that L. S. McClure was a director and the general manager of the mining company, and since the 12th day of June, 1900, has also been its president, and was also during the times mentioned in the bill the agent and representative of his brother, Charles D. McClure, who was also a director of the company until October 9, 1900; that the moneys borrowed from the complainant were requested by the mining company for the purpose of meeting its urgent current expenses in building a concentrator at its mine in the town of Neihart, Cascade county, Mont., and that the complainant refused to loan the company any money except upon the understanding that Charles D. McClure—

"would immediately repay the same in preference to any other indebtedness of the said Diamond R Mining Company, and before any of said moneys were so advanced, and as a part of the consideration therefor, it was so understood and agreed that the said Charles D. McClure would repay the same to the complainant as aforesaid, and fully protect the complainant against any loss or damage as the result of said loans to the said defendant company; that some time subsequent to the advancement of said sums, aggregating $20,000, the petitioner demanded payment thereof from the said Charles D. McClure, and he promised to pay the same, but notwithstanding the aforesaid facts and circumstances, whereby the complainant was led to believe and did believe that it would not be obliged to bring suit by attachment or otherwise to enforce the payment of said indebtedness, the complainant knowing at all times that the said Charles D. McClure was the only other large creditor of the defendant company, the said Charles D. McClure did nevertheless institute the aforesaid action, and, as hereinbefore set forth, levied upon and attached all the property of any kind and character belonging to the said defendant Diamond R Mining Company; that the said attachment by the defendant herein, Charles D. McClure, as plaintiff in said action, was not sought or made in good faith, as stated in his affidavit therefor, but was made, and the said action prosecuted and judgment therefor taken, for the express purpose of hindering, delaying, and defrauding this complainant and other creditors out of their claims and demands, and the said proceedings will have the effect so intended unless set aside by this court."

It is further alleged in the bill that in the year 1900 a concentrator with a daily capacity of 100 tons had been completed by the mining

company for the purpose of concentrating its ores, which was working successfully, when the McClures—

"controlling the affairs of the company as aforesaid, proceeded to enlarge said concentrator so as to make the same of a capacity of 300 tons of ore daily, and it was done at an additional cost and expense of about $100,000 (most of which was advanced by said Charles D. McClure, one of the defendants herein, and embraces the moneys sued for in the aforementioned action); that the company voted to enlarge said concentrator and to borrow said money under the promise and agreement of said Charles D. McClure that he would consolidate the Broadwater group of mines, then owned by him, with the mines of said company, but which promise and agreement he has never kept, and there has thereby been a failure of consideration for the notes sued on by said Charles D. McClure, plaintiff in said action; that the said concentrator, after successfully treating the ores on the dump of said company as aforesaid, was thereafter used by said Charles D. McClure for his sole benefit in concentrating ores from his said Broadwater group of mines, under a contract of 75 cents per ton, which was a loss to said company, instead of being used to treat the ores from the company's mine as originally intended; that notwithstanding that the said concentrator was reasonably worth the sum of $175,000, if the same were to be kept in operation in pursuance of the original plan, and notwithstanding, also, that the mining claims and property of the defendant company were, taken in connection with the concentrator, then and there reasonably worth the sum of $500,000, and could have been worked and operated at a profit, all of which was well known to them, the said Charles D. McClure and L. S. McClure, acting in collusion for the purpose of cheating and defrauding the complainant and other creditors, as well as the minority stockholders of the defendant company, closed down the said concentrator, and failed and refused to open up the defendant company's mine, and at once instituted the aforesaid action, and levied upon and attached all of the defendant company's said property."

The bill also alleges that in the year 1903 one Bartlett recovered a money judgment against the mining company in the district court of Montana for the county of Cascade, under which the ground upon which the first part of the mining company's concentrator was erected was sold, and "that the defendant herein, Charles D. McClure, and his brother, L. S. McClure, acting collusively and fraudulently as aforesaid, took no steps whatsoever to redeem said property of the company, or to protect the interests of the stockholders or creditors thereof," but that on the 23d day of March, 1905, Charles D. McClure himself redeemed the property so sold, taking a deed therefor, and—

"that under and by virtue of the provisions of section 1236 of the Code of Civil Procedure of the state of Montana for 1895 the said Charles D. McClure, plaintiff in said action, would not have permitted this complainant or any other redemptioner to redeem from him, except by paying the amount so paid by the defendant herein as aforesaid, and also the amount of defendant's said judgment, to wit, $86,180, with interest thereon from the date thereof; that this prejudice and damage to complainant has resulted because of said defendant's delay and laches in not having execution issued upon his judgment in the aforementioned action."

The bill also contains the allegation that the McClures—

"were acting in collusion and in fraud of the rights of the complainant and other creditors of the defendant company when they created the indebtedness for enlarging the concentrator, when they closed down the defendant company's concentrator and failed and refused to open its mines, and when the aforesaid attachment suit of the defendant herein, Charles D. McClure, plaintiff in said action, was instituted and judgment by default taken after serv-

ice upon said L. S. McClure, and also when they delayed for five years to take any steps whatever to sell the property held under said attachment, leaving this property during all of said time in the custody of their said employé, John L. Tripp; that they also acted in collusion and for the same fraudulent purpose and design in making no reasonable effort to pay the said claim of George F. Bartlett, and in permitting the sale of said land and premises to satisfy his said judgment, and in effecting the redemption of said property in the manner aforesaid, to the great damage, loss, and injury of this complainant, and other creditors, as well as the minority stockholders of the defendant company; that by reason of all the acts aforesaid the said attachment lien and also the judgment in said cause should be held fraudulent and void as to this complainant."

We are unable to see that any of the alleged frauds constitute any valid reason for avoiding the judgment in favor of Charles D. McClure. There is nothing in the bill showing that the amount for which it was given was to any extent in excess of what was justly due McClure on the notes the company executed to him for the loan. Surely a court of equity will not undertake to annul a judgment rendered in an action at law, in the absence of facts showing that there was a meritorious defense to the action (White v. Crow, 110 U. S. 183, 4 Sup. Ct. 71, 28 L. Ed. 113), more especially when the attempt is not made until more than five years after the entry of the judgment at law, no excuse for the delay appearing. Denton v. Baker, 93 Fed. 46, 35 C. C. A. 187. If Charles D. McClure made himself personally responsible for the money the complainant subsequently loaned the mining company, complainant might have sued him therefor, and if it be true, as alleged, that he agreed with the mining company to consolidate with its mines the Broadwater group of mines owned by him, his alleged failure to keep that agreement might have given the mining company a cause of action against him, but is no ground for annulling a judgment in his favor based upon notes for money loaned at the instance of a subsequent creditor of the same debtor. Neither do we see how that result can be effected by the alleged closing down of the concentrator by the company, or the alleged failure of the latter to redeem that portion of the ground upon which the original concentrator was erected from the sale thereof made under the judgment given against the company in favor of Bartlett. We think the court below was right in holding that the facts alleged in the bill are insufficient to entitled the complainant to any of the relief sought.

The judgment is affirmed.